# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MICHEL THOMPSON and BRANDI GREEN, Individually and On Behalf of All Similarly Situated Persons, <br>    Plaintiff, | § | |
| V. <br> ATLAS RETAIL SERVICES, INC., <br> ATLAS INSTALLATIONS, INC., <br> JASON PARRISH, Individually, and <br> DOLGENCORP OF TEXAS, INC., <br>    Defendants. | § <br><br><br><br> § | CIVIL ACTION NO. 4:22-cv-854 <br><br><br><br> JURY DEMANDED |

## PLAINTIFFS' ORIGINAL COLLECTIVE ACTION COMPLAINT

### Summary of Lawsuit

Defendants Atlas Retail Services, Inc. ("ARS") and Atlas Installations, Inc., ("AI") (jointly, "Atlas") and their owner/control person, Jason Parrish ("Parrish") ("Atlas"), have a business plan that includes hiring traveling merchandisers and misclassifying them as independent contractors despite the fact that the workers are treated as and have all of the characteristics of employees. Defendant Dolgencorp of Texas, Inc., which does business under the trade name of Dollar General ("Dollar General"), knowingly utilizes Atlas workers and exerts enough control over the day-to-day job functions of the Atlas workers to make Dollar General a joint employer with Atlas. Atlas and Dollar General (jointly referred to as "Defendants") break the law in order to avoid paying overtime pay to merchandisers, saving the Defendants money and allowing them to gain an unfair advantage over competitors who follow the law in their employment practices. Plaintiffs Michel Thompson ("Thompson") and Brandi Green ("Green") (jointly, "Plaintiffs") are two of a number of salaried merchandisers hired by

Atlas and utilized by Dollar General. Plaintiffs bring this lawsuit on their own behalf and on behalf of their former co-workers against Defendants to recover unpaid overtime that is mandated by the Fair Labor Standards Act ("FLSA").

**Facts Supporting Relief**

**Allegations Related to Plaintiffs' and Their Co-Workers' Claims**

1. Dollar General hires Atlas to "remodel" Dollar General Stores. Atlas hires individuals to form crews of approximately 12 workers to do this work. One worker is called the "team lead," and is the liaison with the Dollar General representative and is generally in charge of the crew and their work. However, a Dollar General representative is on-site at the store being remodeled during the entire process. The Dollar General representative is the person ultimately responsible for the work being performed and determines how that work is done, assigns duties to each crew member and monitors the progress and quality of the work. The Dollar General representative has the power and ability to direct Atlas to terminate the employment of a crew member that he or she determines to be unacceptable. Each remodel requires removing much of the merchandise from a Dollar General store and putting it in a storage container brought on site for that purpose. The Atlas workers then move shelving, coolers, and other fixtures to new locations according to Dollar General plans and specifications. The Atlas crew then returns the merchandise to the shelves under Dollar General's direction. Each Atlas crew spends 5-6 days on each remodel, usually beginning on Saturday and finishing the following Thursday, Friday, or occasionally Saturday.

2. Atlas classifies the crew members as "independent contractors." Atlas pays each worker a weekly payment for each remodel. This payment is determined solely by Atlas and does not vary unless Atlas decides to change it. Atlas assigns the crews to remodel particular

locations and both Atlas and Dollar General supervise, monitor, and direct the workers in the manner and conduct of their work.

3. Atlas provides the tools to its workers that are required for the work, and the work is performed at Dollar General's stores according to Dollar General's procedures, instructions, and direct supervision. The Atlas workers have no ability to increase their profit or loss due to their own efforts. Atlas and Dollar General totally control the workers' pay and the method of getting paid.

4. If an Atlas worker helps to unload the fixture truck on Saturday prior to the reset work beginning on Sunday, that worker is paid an extra sum of money for that work. Similarly, if a team finishes their job on time and one of the workers on that team is sent to assist a team at another Dollar General store that is running behind schedule to finish their job, that worker is paid extra for the extra work. On the other hand, if a worker arrives late for work on any day, leaves early, or misses a day at work, Atlas docks that person's pay.

5. Thompson worked for Atlas as a merchandiser from early 2021 until June of 2021 and then again between November of 2021 and March of 2022. Thompson had various duties, including but not limited to the following: (1) working in the retail stores of Atlas's customers which generally was Dollar General, (2) removing merchandise from shelves, (3) moving shelving units to assigned locations according to the customers' plans, (4) building shelving units in designated locations in stores, and (5) re-stocking the shelves with product.

6. Green has worked for Atlas as a merchandiser between February of 2021 and the present time. Green had various duties, including but not limited to the following: (1) working in the retail stores of Atlas's customers which generally was Dollar General, (2) removing merchandise from shelves, (3) moving shelving unites to assigned locations according to the

customers' plans, (4) building shelving units in designated locations in stores, and (5) re-stocking the shelves with product.

7. During the time Thompson and Green worked for Atlas servicing Dollar General locations, Plaintiffs regularly worked in excess of 40 hours per week.

8. Atlas purported to pay Plaintiffs and their co-workers on a salary basis, that is, a set amount of pay for a week's work.

9. Atlas, however, did not always pay Plaintiffs and their co-workers the same amount of pay each week. At various times, if a worker, including Plaintiffs, did not work the full number of assigned days for the week, Atlas paid the workers less than the promised salary. If the workers worked more than the assigned days or provided additional services, such as unloading trucks or helping to finish up remodels at other locations after their assigned location had been completed, Atlas sometimes paid the worker more than the promised salary.

10. Atlas did not pay Plaintiffs or their co-workers an overtime premium for any of the hours that they worked in excess of 40 in a workweek.

11. Plaintiffs worked with numerous other workers employed by Atlas who were paid on an ostensible salary basis and who were misclassified as independent contractors. These workers were also merchandisers who also regularly worked over 40 hours per week. Atlas also did not pay these workers overtime for hours they worked in excess of 40 per workweek.

12. Jason Parrish ("Parrish") is the president and a shareholder, perhaps the only shareholder, of ARS and AI. Parrish controls the manner in which the Atlas merchandisers are paid. Parrish made or was involved in making the decision to classify the merchandisers as independent contractors, to pay the workers a flat rate instead of on an hourly basis, to not keep track of the hours worked, and to not pay them overtime pay.

## Allegations Regarding FLSA Coverage

13. Defendant ARS is a Texas corporation that is covered by and subject to the overtime requirements of the FLSA. Defendant AI is a California corporation that is covered by and subject to the overtime requirements of the FLSA.

14. Since its formation in June of 2021, ARS has been an enterprise engaged in interstate commerce, operating on interstate highways, purchasing materials through commerce, transporting materials through commerce and on the interstate highways, and conducting transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

15. Since its formation in June of 2021, ARS has regularly owned and operated businesses engaged in commerce or in the production of goods for commerce as defined by §3(r) and 3(s) of the Act, 29 U.S.C. §203(r) and 203(s).

16. Since its formation in June of 2021, ARS has conducted sufficient business to exceed an annual gross volume of sales of at least $500,000 (exclusive of excise taxes) based upon the volume of business.

17. Since its formation in June of 2021, ARS's employees have used or handled goods, tools, equipment, or materials that traveled in interstate commerce; that is, goods, tools, equipment or materials that were grown, made or manufactured outside the state of Texas.

18. Defendant AI is a California corporation doing business in the state of Texas and is covered by and subject to the overtime requirements of the FLSA.

19. During each of the three years prior to this complaint being filed, AI was an enterprise engaged in interstate commerce, operating on interstate highways, purchasing materials through commerce, transporting materials through commerce and on the interstate

highways, and conducting transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

20. During each of the three years prior to this complaint being filed, AI regularly owned and operated businesses engaged in commerce or in the production of goods for commerce as defined by §3(r) and 3(s) of the Act, 29 U.S.C. §203(r) and 203(s).

21. During each of the three years prior to this complaint being filed, AI conducted sufficient business to exceed an annual gross volume of sales of at least $500,000 (exclusive of excise taxes) based upon the volume of business.

22. During each of the three years prior to this complaint being filed, AI's employees used or handled goods, tools, equipment, or materials that traveled in interstate commerce; that is, goods, tools, equipment, or materials that were grown, made or manufactured outside the state of Texas.

23. ARS and AI are under common ownership and control (Jason Parrish), the companies perform the same types of work for the same customers/clients, use the same workforce, and they use the same website (atlasinstallations.com) to advertise their services. ARS, AI, and Jason Parrish are joint employers of Plaintiffs and their co-worker merchandisers.

**Plaintiffs' Claims**

24. Atlas was legally required to pay Plaintiffs and their similarly situated merchandiser co-workers ("similarly situated workers") overtime pay for all hours that these individuals worked for Atlas in excess of 40 in any workweek.

25. Thompson worked over 40 hours in most, if not all, workweeks that he worked for Atlas.

26. Green worked over 40 hours in most, if not all, workweeks that she worked for

Atlas.

27. Similarly situated workers worked over 40 hours in many workweeks that they worked for Atlas.

28. Atlas did not pay Thompson or Green any overtime pay for any of the overtime hours that they worked for Atlas or its customers, including Dollar General. Similarly, Atlas did not pay the similarly situated workers any overtime for any of the overtime hours that they worked for Atlas or its customers, including Dollar General.

29. Atlas intentionally misclassified Thompson, Green, and their co-workers as independent contractors in order to avoid paying overtime to those individuals. In addition to wrongfully taking money and benefits from its employees, Atlas's intentional and knowing actions allowed Atlas to gain an unfair advantage over its competition in the marketplace.

30. Atlas knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice regarding overtime compensation with respect to Plaintiffs and similarly situated employees. Such practice was and continues to be with regard to the similarly situated employees, a clear violation of the FLSA.

31. The remodels of Dollar General Stores takes place on Dollar General's premises.

32. Dollar General exerted and continues to exert significant control over the work performed by Plaintiffs and their co-workers.

33. Dollar General dictated and continues to dictate the timeline for each remodel and had and continues to have very detailed requirements as to how the process of the remodel would be performed.

34. Dollar General requires one of its employees to be present throughout each remodel. That Dollar General employee controls every aspect of each remodel, including but not

limited to assigning the workers from each Atlas team to specific tasks for the remodel. The Dollar General employee writes out specific individualized directions and tasks for each member of the Atlas remodel team each day.

35. In addition, Dollar General has actual knowledge of the manner in which Atlas and numerous other of its merchandising contractors pay their personnel. Dollar General knows that Atlas does not pay its merchandisers overtime pay. Dollar General structures its pricing for the remodel work based on its knowledge of the illegal manner in which Atlas merchandisers are paid. Dollar General is a joint employer with Atlas of the Atlas merchandisers that remodel its stores.

## Cause of Action

**Violation of the FLSA – Failure to Pay Overtime Wages Owed**

36. Atlas violated the FLSA by failing to pay Plaintiffs and the similarly situated co-worker merchandisers overtime pay for hours worked over 40 per workweek.

37. Plaintiffs and the similarly situated employees have suffered damages as a direct result of Atlas's illegal actions.

38. Atlas is liable to Plaintiffs and all similarly situated workers for unpaid overtime compensation, liquidated damages, attorney's fees and costs of Court under the FLSA, for the three-year period preceding the filing of this lawsuit.

39. Parrish is also liable for the damages to Plaintiffs and similarly situated employees because he is an "employer" of these individuals under the FLSA.

40. Dollar General is jointly and severally liable for the damages to Plaintiffs and similarly situated workers because it is a joint employer of these individuals along with Atlas.

## Similarly Situated Employees

41. Atlas's failure to pay its workers as required by the FLSA resulted from a generally applicable policy that does not depend on the personal circumstances of the similarly situated employees; that is, paying non-exempt merchandising workers on a weekly basis and docking and supplementing their pay depending on time worked. This generally applicable policy is prohibited by the FLSA. Thus, Plaintiffs' experience is similarly situated to the other workers of Atlas and Dollar General who are all carrying out the same duties and subjected to the same illegal misclassification and illegal pay practices.

42. The workers who are similarly situated are properly defined as:

> **All individuals who are/were employed or engaged by and paid on a salary basis by Defendants Atlas Retail Services, Inc. and/or Atlas Installations, Inc. during the three-year period preceding the filing of this Complaint to perform work as merchandisers for Dollar General and other retailers and who were classified as independent contractors, paid on a 1099 basis.**

## Defendant, Jurisdiction, and Venue

43. Defendant Atlas Retail Services Inc. is a Texas corporation and an "employer" as defined by the FLSA. With respect to Plaintiffs, ARS is subject to the provisions of the FLSA. ARS was at all relevant times an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. §§ 203(r) and (s) and had gross annual revenues in excess of $500,000.00. ARS may be served through its registered agent, United States Corporation Agents, Inc., at 9900 Spectrum Drive, Austin, Texas 78717.

44. Defendant Atlas Installations Inc. is a California corporation that has not registered to do business in Texas. AI is an "employer" as defined by the FLSA. With respect to Plaintiffs, AI is subject to the provisions of the FLSA. AI was at all relevant times an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. §§ 203(r) and (s) and had gross annual revenues in excess of $500,000.00. AI's registered agent

is Jason Parrish. Mr. Parrish may be served at 990 US Hwy 287, Suite 106-201, Mansfield, Texas 76063, or wherever he may be found.

45. Defendant Jason Parrish is an individual believed to be presently residing in the state of Texas. As the president and control person of ARS and AI, he exerted sufficient control over the employment and compensation of Plaintiffs and similarly situated workers that he is their "employer" under the FLSA. Mr. Parrish may be served with process at 990 US Hwy 287, Suite 106-201, Mansfield, Texas 76063, or wherever he may be found.

46. Defendant Dolgencorp of Texas, Inc. ("Dolgencorp") is a Kentucky corporation and an "employer" as defined by the FLSA. With respect to Plaintiffs, Dolgencorp is subject to the provisions of the FLSA. Dolgencorp was at all relevant times an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. §§ 203(r) and (s) and had gross annual revenues in excess of $500,000.00. Dolgencorp may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

47. This Court has federal question jurisdiction under the FLSA, and venue is proper pursuant to 28 U.S.C. § 1391(b), as Defendants and Plaintiffs transacted business within this judicial district, and the events underlying this complaint occurred within this judicial district as well.

### Demand for Jury

48. Plaintiffs demand a trial by jury.

### Prayer for Relief

WHEREFORE, Michel Thompson, Brandi Green, and all employees similarly situated who join in this action demand:

1. Issuance of notice as soon as possible to all similarly situated persons performing remodeling work who are/were employed or engaged by and paid on a weekly basis by Atlas Retail Services, Inc. and/or Atlas Installations, Inc. during the three-year period immediately preceding the filing of this Complaint. Generally, this notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit if they were not paid correctly for work performed or hours worked during any portion of the statutory period;
2. Judgment against Defendants for an amount equal to Plaintiffs' and the similarly situated employees' unpaid overtime wages at the applicable rate;
3. An equal amount to the overtime wage damages as liquidated damages;
4. Judgment against Defendants that their violations of the FLSA were willful;
5. To the extent that liquidated damages are not awarded, an award of prejudgment interest;
6. All costs and attorney's fees incurred prosecuting these claims;
7. Leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;
8. Leave to amend to add claims under applicable state laws; and
9. For such further relief as the Court deems just and equitable.

Respectfully Submitted,

**THE BUENKER LAW FIRM**

*/s/ Josef F. Buenker*
Josef F. Buenker
TBA No. 03316860
jbuenker@buenkerlaw.com
P.O. Box 10099
Houston, Texas 77206
713-868-3388 Telephone
713-683-9940 Facsimile

**ATTORNEY-IN-CHARGE FOR PLAINTIFFS**